Phoenixville *v.* Public Utility Commission, and Phoenix Plaza, Inc., Intervenor.

Argued May 3, 1971, before President Judge Bow-
MAN, and Judges KRAMER, WILKINSON, JR., MANDERINO,
MENCER and ROGERS.

*Thomas M. Garrity,* with him *J. Edmund Mullin*
and *Wisler, Pearlstine, Talone & Gerber,* for appellant.

*Alan R. Squires,* Assistant Counsel, with him *Ed-
ward Munce,* Acting Counsel, for appellee.

*Michael L. Temin*, with him *Wolf, Block, Schorr and Solis-Cohen*, for intervenor.

OPINION BY JUDGE KRAMER, August 5, 1971:

This is an appeal from an Order of the Pennsylvania Public Utility Commission, appellee (Commission), dated September 21, 1970, directing the Borough of Phoenixville, appellant (Phoenixville), to allow Phoenix Plaza, Inc., intervening appellee. (Plaza), to install and connect its water and sewage lines to facilities owned and operated by Phoenixville, and thereafter to furnish Plaza and its tenants with water and sewage services. Plaza is the real estate developer of a shopping center in East Pikeland Township. Phoenixville operates water and sewage facilities serving customers* within its political boundaries, and in several townships outside its political boundaries (Schuylkill, Upper Providence and Charlestown Townships); in addition, while it does provide water service to two "courtesy customers"** in East Pikeland Township, it serves no sewage customers in that latter township.

The Commission assumed jurisdiction in this matter as a result of a service complaint filed by Plaza on June 25, 1969. Phoenixville and Plaza's predecessors in title (who assigned their right to Plaza) entered into a contract on October 15, 1968, wherein Phoenixville agreed to provide water and sewage service to the predecessors of Plaza (and their "successors and assigns"). The contract required the developer to bear the costs of pipeline and tie-in installations, and to pay the effective rates for the water and sewage services to be provided. On January 16, 1969, after the transfer of title to the realty to Plaza, Phoenixville Borough Council passed a

---

* About 800 of Phoenixville's 4,500 water customers, and about 15 of its 3,700 sewer customers are located outside its boundaries.

** "Courtesy customers" is the classification or terminology determined solely by Phoenixville.

resolution designed to unilaterally rescind the contract and informed Plaza of its action. The service complaint filed before the Commission resulted from this rescision action, and refusal by the Borough to provide its agreed-to service. In its adjudication, the Commission did not rely upon the contract, but, rather based its action on the reasonableness of the request for extension of service. From the order of the Commission to provide such service Phoenixville appealed to this Court.

The precise question presented to this Court in this case is whether the Commission may order a municipality to extend utility service to customers located outside its governmental boundaries, where the municipality, without a certificate of public convenience issued by the Commission, has held itself out to render such service and does render such service to others outside its boundaries. We hold that the Commission has power to render such an order of extension of service so long as there is no abuse of discretion or error of law.

Under Section 2031 (53 P.S. 47031) and Section 2407 (53 P.S. 47407) of the Borough Code, Act of February 1, 1966, P. L. 1656, a borough is authorized to furnish sewer and water utility services to customers "outside the limits of such borough."

So long as a municipality provides utility services *inside* its boundaries, the Legislature specifically excluded such operations from the jurisdiction of the Commission. See 66 P.S. 1102(9); (15) and (17). However, once the municipality provides utility services *outside* its boundaries, the jurisdiction of the Commission attaches, and the municipality is in the same position and subject to the same control as a privately owned public utility. Public Utility Law, Act of May 28, 1937, P. L. 1053. See 66 P.S. 1141 and 1171.*

---

* "Section 1171. Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities,

The Legislature also provided a procedure for the municipality to obtain a certificate of public convenience so that it can delineate the scope and extent of its extraterritorial service area. Section 202 of the Public Utility Law, *supra,* (66 P.S. 1122) in pertinent part reads as follows:

"Upon the application of any public utility and the approval of such application by the Commission, evidenced by its certificate of public convenience *first had and obtained,* and upon compliance with existing laws, *and not otherwise,* it shall be lawful:

"(a) for any public utility to begin to offer, render, furnish or supply within this Commonwealth service of a different nature *or to a different territory than that authorized by*

"(1) a certificate of public convenience heretofore or hereafter granted under this act or under the Public Service Company Law, July 26, 1913 (P.L. 1374).

"(g) for any municipal corporation to acquire, construct, or begin to operate, any plant, equipment, or other facilities for the rendering or furnishing to the public of any public utility service *beyond its corporate*

---

and shall make all such repairs, changes, alterations, substitutions, *extensions,* and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delays. Such service and facilities shall be in conformity with the regulations and orders of the Commission. Subject to the provisions of this act and the regulations or orders of the Commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service. Any public utility service being furnished or rendered by a *municipal corporation beyond its corporate limits* shall be subject to regulation and control by the Commission as to service and *extensions,* with the same force and in like manner as if such service were rendered by a public utility." (Emphasis added.)

limits." (Emphasis added.) This has been a mandatory provision since the effective date of the Public Utility Law of 1937. For some unknown reason, some boroughs and other municipalities have chosen to ignore Section 202, *supra,* and have decided to extend their municipal utility services beyond their municipal boundary lines without obtaining the necessary authorization. Phoenixville in this case somehow believes that if it ignores the Commission, its jurisdicton will not attach. Even a cursory reading of Sections 202 and 401, *supra* (66 P.S. 1171, set forth in the footnote above) certainly destroys such a myth.

There is no authority in the Borough Code, *supra,* or the Public Utility Law, *supra,* to substantiate the Borough's argument that it (acting alone) has authority (1) to classify certain of its customers as "courtesy customers", or (2) to determine the extent of its utility service area outside its boundaries. Quite to the contrary, only the Commission can do that.

As soon as a borough holds itself out to render uncertificated extraterritorial service and renders such service, it is within the jurisdiction of the Commission to determine whether extension of such service should be granted. In effect, if a municipality decides that it will not apply to the Commission for a certificate of public convenience to delineate its utility service area outside its boundaries, then as each new proposed extension is presented to the Commission, the Commission has jurisdiction to determine the extent of the extraterritorial utility service area for the municipality.

Municipalities have ample legislative protection against the possibility of unwanted extensions. As we held in our opinion in the case of *Pa. P.U.C. v. Borough of Akron,* filed simultaneously with this opinion, the Commission may not unilaterally order an extension beyond a certificated area after it issues a certificate

of public convenience. Therefore, if the Borough of Phoenixville does not desire its water and sewer utility service lines to extend beyond the service area it now physically serves, it has available to it the certification route provided by the Legislature. So long as Phoenixville continues to render uncertificated extraterritorial service, it will be within the discretionary power of the Commission, on the basis of reasonableness, to determine questions of extensions of service. To hold otherwise would make Section 401 of the Act (66 P.S. 1171) meaningless.

In the case of *Altoona v. Pa. P.U.C.*, 168 Pa. Super. 246, 77 A. 2d 740 (1951), the Pennsylvania Superior Court held that a municipal water utility was subject to the jurisdiction of the Commission on questions concerning the extension of service beyond Altoona's city boundaries, where the city served such areas without certification; and that the test of the Commission's power is limited to reasonableness.

In this case, Phoenixville renders water and sewer utility service to customers outside its boundaries, all without a certificate of public convenience from the Commission. There can be no question that Phoenixville is subject to the Commission's power and jurisdiction to determine the extent of Phoenixville's extraterritorial service area. Although there are only two water customers in East Pikeland Township served, without certification, it is still for the Commission to determine from the record made at the hearing, whether the proposed customer (Plaza) is within the extraterritorial service area of Phoenixville. The Commission has made such a determination, and we do not find any abuse of discretion in its adjudication.

The Commission properly disregarded as the sole basis for its adjudication the agreement between Phoenixville and Plaza's predecessor in interest. However, it was proper for the Commission to utilize such evi-

dence to determine that Phoenixville had held itself out to render such water and sewage service without any undue physical or financial hardship to Phoenixville or to its water and sewage plants.

We are not impressed with Phoenixville's request for a remand based upon an argument that the record should be supplemented with additional testimony. The record discloses that Phoenixville was not denied the right to present any testimony or evidence it desired at the hearing before the Commission's hearing examiner. Phoenixville has had its full day in court.

We also make a specific point to note that we recognize the factual distinction between the extraterritorial water service to customers and no extraterritorial sewage service in East Pikeland Township. If Phoenixville did not have *any* extraterritorial sewage service in the other three townships, we would have held that the Commission did not have jurisdiction to order the extension of the sewer lines service to Plaza. Unfortunately for Phoenixville, that is not the fact. Phoenixville does provide uncertificated extraterritorial sewer service. Since it does, it is for the Commission to determine from the facts, on the basis of reasonableness, whether the requested extension for sewer service should be granted to Plaza. Phoenixville cannot pick and choose its extraterritorial customers or determine how far its uncertificated extraterritorial service area will be extended, or avoid the jurisdiction of the Commission under the facts of this case. If Phoenixville desires to limit its service area, the Legislature has provided the means as mentioned above.

The Commission's power to order extension is not limitless, however. Certainly just because a municipality is rendering an extraterritorial utility service on the easterly side of its boundaries, does not mean the Commission can order extensions arbitrarily on the west or north or south, perhaps many miles away. The test is

reasonableness. Here it was reasonable to determine that since Phoenixville held itself out to supply water *and sewage* to Plaza's predecessors, even Phoenixville believed that its extraterritorial service area extended out at least as far as Plaza's property, and this in reality is all that the Commission ordered.

Based upon the above analysis of the record and the law, we affirm the order of the Pennsylvania Public Utility Commission dated September 21, 1970, and therefore

**ORDER**

AND NOW, this 5th day of August, 1971, the appeal of the Borough of Phoenixville is hereby dismissed.

Judge MANDERINO concurs in result only.