The City of Erie, Petitioner *v.* The Pennsylvania Public Utility Commission and The Township of Harborcreek, Respondents.

Argued December 7, 1978, before Judges CRUM-LISH, JR., MENCER and CRAIG, sitting as a panel of three.

*Marilyn C. Fisher,* with her *Lawrence L. Kinter,* City Solicitor, for petitioner.

*Eugene J. Brew, Jr.,* with him *Dale & Brew,* for respondent, Township of Harborcreek.

*Kenneth S. Siegel,* Assistant Counsel, with him *Shirley Rae Don,* Assistant Counsel, and *Kathleen Herzog Larkin,* Chief Counsel, for respondent, Pennsylvania Public Utility Commission.

OPINION BY JUDGE MENCER, March 12, 1979:

The City of Erie (Erie) has appealed an order of the Pennsylvania Public Utility Commission (Commission) ordering Erie to extend its municipal water service into specified areas of the Township of Harborcreek (Harborcreek). We reverse and remand for a further hearing.

Because of water pollution and shortages in certain areas of Harborcreek, affecting approximately 174 family dwellings, Harborcreek filed a complaint with the Commission on August 20, 1976, seeking an extension of Erie's current service in the township to the affected areas.[1] At a hearing before an administrative law judge, in which the staff of the Commission intervened, Erie resisted the requested extension, contending that the Commission lacked the authority to order Erie to extend its water lines and that the increased demand caused by the additional residences would have a deleterious effect on its own

---

[1] Erie has been providing water service to several sections of Harborcreek since at least September 3, 1963, the date of its certificate of public convenience.

water system. The administrative law judge, and subsequently the Commission, found, however, not only that it did have the authority to order the extension but that the proposed extension was reasonable and would not seriously affect present Erie customers. Upon entry of the Commission's order, Erie appealed to this Court.

The primary issue on appeal is the authority of the Commission to order a municipality operating outside of its territorial boundaries to extend its water service beyond its certificated area of service.

The Commission's first argument is based on our decision in *Phoenixville v. Public Utility Commission,* 3 Pa. Commonwealth Ct. 56, 280 A.2d 471 (1971). In *Phoenixville,* we held that, when a municipality renders *uncertificated* extraterritorial service, the Commission has the authority to order extensions of the extraterritorial service as long as the ordered extensions are reasonable. *See also Altoona v. Pennsylvania Public Utility Commission,* 168 Pa. Superior Ct. 246, 77 A.2d 740 (1951). Therefore, if Erie is rendering water service outside of the area delineated by its certificate of public convenience, the Commission has the authority to order reasonable extensions of that service.

Relying on the findings in two previous Commission decisions,[2] the administrative law judge found that Erie was providing water service outside of its area of certification and that the Commission therefore had the authority to order the extension pursuant to *Phoenixville.* Erie contends, however, that the law judge's reliance on matters which were never properly made part of the record below was error and that, if these decisions are excluded, there is no

---

[2] *Willis v. City of Erie,* 47 Pa. P.U.C. 731 (1974) ; *Hoffmann v. City of Erie,* 42 Pa. P.U.C. 656 (1966).

evidence to support the findings of uncertificated service.[3]

Before an administrative agency in an adjudication can base its findings on information contained in the records of other cases decided by itself, it must appear on the record that notice was given to the parties of record that the adjudicating body is considering specified information. *See Shenandoah Suburban Bus Lines Case,* 158 Pa. Superior Ct. 638, 46 A.2d 26 (1946), *aff'd per curiam,* 355 Pa. 521, 50 A.2d 301 (1947); *Gillis v. Public Service Commission,* 105 Pa. Superior Ct. 389, 161 A. 563 (1932); *Hoffman v. Public Service Commission,* 99 Pa. Superior Ct. 417 (1930); *see also* Annot., 18 A.L.R. 2d 552 (1951). As stated in *Gillis, supra* at 398, 161 A. at 566, "[a]n administrative tribunal may take notice of results reached by it in other cases, when its doing so is made to appear in the record and the facts thus noted are specified so that matters of law are saved. U.S. v. B. & O.S.W.R.R., 226 U.S. 14." Only in this way can a party's fundamental due process rights of notice and an opportunity to be heard be protected. In ad-

---

[3] We are cognizant that the record contains a map, properly identified and admitted into evidence, which purports to show the boundaries of Erie's water service in Harborcreek. No testimony was taken, however, as to whether the boundaries on this map correspond with the boundaries of Erie's certificate of public convenience. Although the record does contain a copy of Erie's certificate of public convenience which, if compared with the map showing the water service, indicates that Erie is servicing areas outside of its certificate of public convenience, the certificate was never marked and identified as an exhibit or admitted into evidence. Hence, it cannot be considered on this appeal. *See U.S. v. Abilene & Southern Railway,* 265 U.S. 274, 288 (1923) ("Nothing can be treated as evidence which is not introduced as such.") *Cf. Commonwealth v. Bernstein,* 7 Pa. Commonwealth Ct. 594, 300 A. 2d 905 (1973) (records of convictions not formally introduced into evidence are not validly part of the record).

dition, when such material is not made part of the record below, an appellate court is unable to fully review the agency's decision. *See Ohio Bell Telephone Co. v. Public Utilities Commission,* 301 U.S. 292 (1937); *Interstate Commerce Commission v. Louisville & Nashville Railroad,* 227 U.S. 88 (1913); *Vandergrift Borough v. Polito,* 397 Pa. 538, 156 A.2d 99 (1959); *Shenandoah Suburban Bus Lines Case, supra.*

A review of the transcript indicates that neither the *Hoffmann* nor *Willis* decision was properly made part of the record below by the administrative law judge for the purpose of showing that Erie was rendering service outside of its certificated area. Although the law judge did state he would consider *Hoffmann* to be part of the record, he did not specify that he was considering the decision to sustain the Commission's authority to act. At most, it was incorporated to provide technical data on the capacity of the Erie water system. As for *Willis,* it was mentioned only in connection with the completion of scheduled improvements in Erie's water system. It was never referred to by anyone as supplying a basis upon which to find that Erie was operating outside of its certificated boundaries. Thus, the use of these decisions by the Commission without proper notice to Erie amounted to a denial of due process.

Even assuming that *Hoffmann* or *Willis* was properly made part of the record below, neither case has been included in the record on appeal as certified to us by the Commission, although *Willis* is included in the Commission's brief. It is a fundamental principle of appellate review that the appellate court is confined to the record before it, excluding matters or facts asserted in briefs. *See McCaffrey v. Pittsburgh Athletic Association,* 448 Pa. 151, 293 A.2d 51 (1972); *Wolf v. Commonwealth,* 403 Pa. 499, 170 A.2d 557

(1961); *Solomon v. Corleto*, 20 Pa. Commonwealth Ct. 361, 340 A.2d 920 (1975). Absent these aforementioned decisions in the record, it is impossible for us to ascertain whether the Commission has presented sufficient evidence to establish Erie's alleged uncertificated service.[4] *See Department of Transportation, Bureau of Traffic Safety v. Shisslak*, 12 Pa. Commonwealth Ct. 168, 316 A.2d 684 (1974).

The Commission also contends that, even if Erie is not providing service beyond its certificated boundaries, the Commission has the authority, either express or implied, to order any public utility to make reasonable extensions of its service outside of its cer-

---

[4] The Commission also points to Section 1112 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended, formerly* 66 P.S. §1442, repealed by Section 2 of the Act of July 1, 1978, P.L. 598, No. 116. A similar provision is now contained in the Public Utility Code, 66 Pa. C.S. §316. Section 1112 reads as follows:

Whenever the commission shall make any rule, regulation, finding, determination, or order under the provisions of this act, the same shall be prima facie evidence of the facts found, and shall remain conclusive upon all parties affected thereby, unless set aside, annulled, or modified on judicial review.

What we have said concerning notice is also dispositive of any contention that *Willis* and *Hoffmann* control, based on principles of res judicata or collateral estoppel, as again Erie had no notice of such a contention. *Cf.* Pa. R.C.P. No. 1032 (failure to plead res judicata constitutes a waiver of the defense).

Moreover, since neither case is part of the record on appeal, it is impossible to determine whether the necessary elements of res judicata or collateral estoppel apply. *See Pasquinelli v. Southern Macaroni Mfg. Co.*, 272 Pa. 468, 116 A. 372 (1922); *Commonwealth ex rel. Allen v. Allen*, 162 Pa. Superior Ct. 145, 56 A.2d 343 (1948).

While our decision may appear to conflict with *Spackman v. Pennsylvania Public Utility Commission*, 141 Pa. Superior Ct. 164, 14 A.2d 839 (1940), wherein the Commission relied upon prior proceedings, pursuant to Section 1112, without, on the face of the opinion, apparently giving proper notice to the opposing party, a review of the paperbooks discloses otherwise.

tificate of public convenience. We rejected this precise argument in *Akron v. Pennsylvania Public Utility Commission,* 2 Pa. Commonwealth Ct. 625 (1971). Although *Akron* was reversed, *see Akron Borough v. Pennsylvania Public Utility Commission,* 453 Pa. 554, 310 A.2d 271 (1973), the Supreme Court specifically stated it was not deciding the issue of the Commission's authority to unilaterally order a public utility to extend its service beyond its certificated area.[5] Therefore, our decision in *Akron* is still controlling and thus we hold that the Commission, absent any evidence of extra certificated service, has no authority to order Erie to extend its water service into the Township of Harborcreek.

In view of our holding that the Commission failed to afford Erie due process of law, we remand the case to the Commission for a further hearing or hearings. *See Vandergrift Borough v. Polito, supra; Begis v. Industrial Board of the Department of Labor & Industry,* 9 Pa. Commonwealth Ct. 558, 308 A.2d 643 (1973); *Pennsylvania State Athletic Commission v. Bratton,* 177 Pa. Superior Ct. 598, 112 A.2d 422 (1955). It is anticipated that, during the further hearing, all parties concerned will be afforded the opportunity to produce and rebut evidence pertaining to Erie's alleged uncertificated service.

## ORDER

AND Now, this 12th day of March, 1979, the order of the Pennsylvania Public Utility Commission, dated October 19, 1977, is reversed, and the record is remanded to the Commission with directions that a fur-

---

[5] *See also Western Pennsylvania Water Co. v. Pennsylvania Public Utility Commission,* 471 Pa. 347, 370 A.2d 337 (1977), *rev'g* 10 Pa. Commonwealth Ct. 533, 311 A.2d 370 (1973), wherein the Supreme Court again declined to decide the validity of our holding in *Akron.*

ther hearing or hearings be held relative to whether the City of Erie is rendering water service to an area outside of its certificate of public convenience and for a further order not inconsistent with the above opinion.