Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* Greisler Brothers, Appellee.

Argued June 10, 1982, before President Judge CRUMLISH and Judges ROGERS and MACPHAIL, sitting as a panel of three.

*George Bristol,* Assistant Counsel, with him *Martin B. Burman* and *Scott M. Olin,* Assistant Counsels, *Ward T. Williams,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellant.

*Christina J. Barbieri,* with her *Lewis Kates, Kates, Livesey & Mazzocone, P.C.,* for appellee.

OPINION BY JUDGE MACPHAIL, August 30, 1982:

This appeal by the Department of Transportation (DOT) from an order of the Court of Common Pleas of Philadelphia County which held that a "de facto" taking of the property of Greisler Brothers, Inc. (Appellee) occurred when DOT constructed an access ramp to Interstate Highway 95 (I-95) in the bed of Summer Street in the City of Philadelphia, raises complex issues, most of which could have been avoided by prompt and proper pleading in the trial court.

The protracted proceedings in this case were initiated on February 29, 1968 when Appellee petitioned the trial court for the appointment of a board of viewers to assess damages to its property, which is improved with a meat processing plant. The petition alleged a de facto taking[1] as a result of planned and effected condemnations of properties in the vicinity of Appellee's plant, as well as the fact that the planned access ramp, when constructed, would interfere with access to Appellee's delivery entrance at the rear of its plant.

The petition was granted by the trial court on May 3, 1968 and a board of viewers was appointed. Approximately two and one-half years later, Appellee petitioned the trial court to limit the issues before the board to that of damages based on the theory that DOT had waived its right to challenge the existence of a compensable injury to Appellee's property by its failure to file prelmiinary objections. The trial court originally ordered that the issues before the board be limited to damages but, after several procedural complexities which need not be detailed here, later vacated its order. An appeal was taken by Appellee from that order to this Court.

---

[1] See Section 502(e) of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, as amended, 26 P.S. §1-502(e).

In an unreported opinion and order filed November 20, 1973, per the late President Judge Bowman, this Court concluded that the case should be remanded to the trial court so that *the court,* rather than the board, could resolve the legal issue of whether or not a de facto taking had occurred. *Greisler Brothers v. Department of Transportation,* (No. 975 C.D. 1972, filed November 20, 1973) *(Greisler I).* Upon remand and following the taking of depositions over a period of several years, the trial court concluded that a compensable injury had occurred and granted Appellee's petition for the appointment of a board of viewers. The instant appeal is from this last order of the trial court, filed on June 9, 1981.

The first issue which we must resolve relates to our decision in *Greisler I.* The issue presented to us in that appeal was whether or not DOT had waived its right to contest the occurrence of a compensable injury to Appellee's property by its failure to file preliminary objections to the petition for the appointment of viewers. While we recognized in *Greisler I* that preliminary objections are the appropriate procedure to employ in contesting a de facto taking,[2] we also noted that the correctness of that procedure was not clearly established in the case law until *after* the time for filing preliminary objections in the instant case had expired. Therefore, although DOT had not filed preliminary objections we held that we could not "now declare retrospectively that PennDOT waived its right to object to Appellant's assertion that a de facto taking had occurred. Newly declared procedure to fill

---

[2] *See Rawls v. Central Bucks Joint School Building Authority,* 8 Pa. Commonwealth Ct. 491, 303 A.2d 863 (1973) ; *Jacobs v. Nether Providence Township,* 6 Pa. Commonwealth Ct. 594, 297 A.2d 550 (1972). Section 504 of the Code, 26 P.S. §1-504, now provides for the filing of preliminary objections to a petition for the appointment of viewers.

gaps in statutorily prescribed procedures should not be applied to produce a waiver of a basic legal issue." *Id.*, slip op. at 4. We, accordingly, remanded for further proceedings.

Appellee contends that our opinion in *Greisler I* required that, upon remand, DOT file preliminary objections nunc pro tunc. In support of its position, Appellee points to our statement in *Greisler I* that "we must remand this matter to the lower court for further proceedings consistent with the present decisional law applicable to the issues *and procedures* to be followed." *Id.*, slip op. at 3 (emphasis added). It is undisputed that DOT, to date, has failed to file preliminary objections to Appellee's petition. Appellee has twice attempted to have DOT's failure to file preliminary objections considered determinative of the issue of whether or not a de facto taking occurred.[3]

We must observe that review of this case would have been greatly facilitated had preliminary objections been filed by DOT. We reaffirm our conclusion in *Greisler I*, however, that new procedures should not be applied retrospectively where to do so would result in the waiver of a basic legal issue. We believe the trial court was correct, therefore, when it decided to treat the pleadings in this case as proper despite the absence of preliminary objections. We will do the same in this appeal. In order to provide some definition to the position of DOT with regard to Appellee's petition, however, we think DOT's arguments on ap-

---

[3] In 1975, Appellee petitioned the trial court to hold that DOT's failure to file preliminary objections constituted an estoppel of its right to be heard on the issue of whether or not a de facto taking occurred. That petition was denied on October 2, 1975. In 1981 Appellee petitioned this Court to quash or dismiss the instant appeal because of DOT's failure to file preliminary objections. That petition was denied on September 29, 1981.

peal must be limited to those raised by DOT before the trial court.

The next matter for our consideration is a motion filed with this Court by Appellee to quash or strike Appendix D attached to DOT's brief. The challenged appendix contains a copy of a deposition taken by DOT of Bertram Greisler, sole stockholder of Appellee. The deposition was never filed with the trial court, as required by Pa. R.C.P. No. 4017(d), and Appellee contends that DOT's action in appending the deposition to its brief is an improper attempt to expand the record on appeal. We agree and will, accordingly, grant Appellee's motion. "It is a fundamental principle of appellate review that the appellate court is confined to the record before it, excluding matters or facts asserted in briefs." *City of Erie v. Pennsylvania Public Utility Commission,* 41 Pa. Commonwealth Ct. 194, 198, 398 A.2d 1084, 1087 (1979). We also, of course, will disregard any statements or arguments in DOT's brief which are based solely on the subject deposition.

Before addressing the merits of the appeal before us, we think a brief review of the facts presented is in order. As previously mentioned, Appellee is the owner of a tract of land fronting on Delaware Avenue in Philadelphia on which a meat processing plant is located. The property is bounded on the south by Summer Street and on the west by Water Street. The building has a loading dock which fronts on Delaware Avenue and through which deliveries and shipments of meat were made when the plant was in operation. The plant also has a rear loading dock which is located on the Water Street side of the building. This entrance was used for the delivery of dry goods by trucks to the plant. Appellee's petition informs us that in order to gain access to this entrance, delivery trucks were forced to back across Water Street to unload.

Thus, the entire width of Water Street would be blocked during the period needed to unload the trucks.

In the late 1960's, DOT began to plan for the contruction of an I-95 entrance ramp. It is undisputed that at the time Appellee filed its petition in 1968, the entrance ramp to I-95 was only in the planning stages. Appellee's petition claimed that a de facto taking of its plant had occurred prior to the construction due to, *inter alia,* DOT's planned condemnation of surrounding properties and the fact that access to Appellee's rear loading dock would be permanently interfered with when the ramp was completed. The record reflects that Appellee stopped operating its facility in 1970[4] and subsequently rented the building to another meat processor until sometime in 1975. The record does not indicate exactly when actual construction on the I-95 ramp started, but it is quite apparent that it had not commenced in 1968. To repeat, Appellee's petition alleges a "pre-construction" de facto taking of its property. Our case law is that no de facto taking occurs from a mere proposal to construct or even from the filing of construction plans. *County of Allegheny v. The Church of Jesus Christ,* 14 Pa. Commonwealth Ct. 510, 322 A.2d 803 (1974). Since that is all that had

---

[4] The reason for the plant's closing in 1970, as explained by Mr. Greisler, was a combination of two factors. First, was the fact that Appellee's business (the processing of meat under government contract) was beginning to undergo a substantial change in 1969. That change, which altered government requirements for the processing of boneless beef, would have necessitated the purchase of additional equipment and expansion of the plant in order to comply with the new government requirements. The second factor was the anticipated interference with access to Appellee's I-95 ramp. In light of uncertainty surrounding the ramp, Appellee decided not to proceed with the plant expansion and, thus, was required to suspend its operations. Mr. Greisler testified that the plant was specially designed and that it could not be altered to any other type of meat processing.

occurred at the time Appellee filed its petition for the appointment of a board of viewers in the instant case, the petition would have been subject to dismissal had it been brought before the trial court in a prompt and proper manner, *i.e.,* by the filing of preliminary objections. That not having occurred, and neither party having sought a clarification of the order entered in *Greisler I* if, indeed, such clarification was necessary, the case continued with the de facto issue unresolved until *1981*. In the interim, construction of the ramp had occurred and now we have another type of de facto taking, that which arises by virtue of the provisions of Section 612 of the Code, 26 P.S. §1-612.[5]

Thus, a careful reading of the trial court's decision in this case reveals that its finding of a compensable injury is based upon the *actual* interference with access to Appellee's building which it concludes resulted *after* the construction of the I-95 ramp.[6] The trial court's finding of injury relates not to the "pre-construction" facts alleged in Appellee's petition, but rather to the existence of "post-construction" consequential damages compensable under Section 612. Since Appellee has not challenged the trial court's ruling in this regard, and, indeed, DOT has argued in its brief that this case does involve an issue of consequential damages under Section 612, we will accordingly limit our review to the issue of whether or not the trial court erred in concluding that DOT is liable

---

[5] Section 612 provides as follows:

All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access thereto, or injury to surface support, whether or not any property is taken.

[6] The trial court implies in its opinion that the construction of the ramp occurred prior to the 1970 closing of Appellee's plant.

to Appellee for consequential damages.[7] We do so, as we believe the trial court did, in the interest of the economy of judicial time and expense to the litigants. Even though Appellee's petition as originally filed would not warrant the appointment of a board of viewers, that same petition grounded upon the same cause, to wit, interference with access, could constitute a de facto taking under the provisions of Section 612, had it been filed after construction began. See Pane v. Department of Highways, 422 Pa. 489, 222 A.2d 913 (1966). The trial court, obviously, gave that effect to the petition and we will not here interfere with that construction.

With regard to the issue of consequential damages, DOT argues that the construction of the ramp did not permanently interfere with "legal" access to Appellee's rear loading dock because the use of that entrance by Appellee required the frequent blockage of Water Street. The issue of what effect, if any, such a temporary blockage of Water Street would have on Appellee's claim for consequential damages, however, was not raised by DOT below and was not considered by the trial court in its opinion. We, accordingly, will not address the issue on appeal. See Hawk Sales Co., Inc. v. Pennsylvania Department of Transportation, 38 Pa. Commonwealth Ct. 535, 394 A.2d 657 (1978). We note, however, that a landowner may make temporary use of the street for purposes necessarily incident to abutting land. He, accordingly, may load and unload goods. Use by an abutting landowner of his right to access, however, must be consistent with traffic conditions and reasonable police requirements.

---

[7] We reiterate that this bizarre result could have been eliminated had DOT filed preliminary objections, even though it was not required to do so by our order in Greisler I, or by the prompt request for disposition of the issue prior to the commencement of construction.

*Breinig v. Allegheny Co.*, 332 Pa. 474, 2 A.2d 842 (1938). There is little record evidence to indicate one way or the other whether Appellee's use of its right of access was consonant with the principles enunciated in *Breinig*.

DOT also argues that Appellee has not been deprived of reasonable access to its property since it still has full use of the loading dock on Delaware Avenue. While it is true that the Delaware Avenue loading area has not been affected by the ramp, the trial court accepted Appellee's position that its meat processing plant was specially designed and required for its operation two separate loading areas—one for dry goods and one for the delivery and shipping of meats. The trial court found that absent access to the dry goods unloading area, the plant was forced to abandon operations.

Despite DOT's argument to the contrary, we believe that this case is controlled by our decisions in *City of Philadelphia v. Sterling Metalware Co.*, 48 Pa. Commonwealth Ct. 313, 410 A.2d 90 (1980); *Tracy v. Pennsylvania Department of Transportation*, 43 Pa. Commonwealth Ct. 218, 402 A.2d 286 (1979) and *Condemnation in West Fairview Borough*, 23 Pa. Commonwealth Ct. 628, 354 A.2d 14 (1976). Those cases stand for the proposition that where there has been a permanent interference with access by a condemning authority, such interference constitutes a compensable injury giving rise to a claim under Section 612. Since the trial court's conclusion that there was a permanent interference with access is based on findings which are supported by competent record evidence and is not erroneous as a matter of law, we must affirm. *Sterling Metalware Co.*

We finally note that while our decision affirms the trial court's conclusion that Appellee is *entitled* to

consequential damages,[8] the amount of those damages must be set by the board of viewers. As we have said, the decision of the trial court, here affirmed, states only that Appellee is entitled to such damages as it is able to prove by reason of the de facto taking pursuant to the provisions of Section 612 of the Code.

Order affirmed.

## ORDER

It is ordered that the order of the Court of Common Pleas of Philadelphia County, dated June 9, 1981, is hereby affirmed.

---

[8] We do not address DOT's argument that any damages suffered by Appellee were not directly caused by DOT's construction of the ramp since DOT failed to raise that issue before the trial court. *Hawk Sales Co.*