540 A.2d 600

East Rockhill Township, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued February 26, 1988, before Judges COLINS, PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*John B. Rice, Jaczun, Grabowski & Leonard,* for petitioner.

*John J. Gallagher,* Assistant Counsel, with him, *John B. Wilson,* Deputy Chief Counsel, *Daniel P. Delaney,* Chief Counsel, for respondent.

*Stephen F. J. Martin,* Office of Chief Counsel, Department of Transportation, with him, *James F. Kilcur, G. Roger Bowers, Eugene N. Cipriani, Raymond J. Porreca, Jr.,* for intervenor, Southeastern Pennsylvania Transportation Authority.

OPINION BY JUDGE COLINS, April 6, 1988:

East Rockhill Township (Township) petitions for review of a Pennsylvania Public Utility Commission (Commission) Order of April 29, 1987 adopting the Recommended Decision of Administrative Law Judge (ALJ) MARTIN B. FOUNTAIN dated February 20, 1987 and denying the Exceptions filed thereto by the Township.

This appeal involves the allocation of responsibility for the replacement, repair and maintenance of an existing rail highway crossing carrying Rockhill Road over and above the railroad tracks of Southeastern Pennsylvania Transportation Authority (SEPTA) in the Township, which is located in Bucks County. The Township closed this bridge to vehicular traffic in December of 1985 due to the occurrence of an accident whereby a car went through the railing rendering the bridge hazardous to public use. The Commission was notified of this event on December 4, 1985 and issued an emergency Order on the same date affirming the Township's action and ordering the bridge closed to vehicular traffic. Thereafter, the Commission ordered that an investigation be instituted for the purpose of determining all matters relating to the rail highway crossing and that a hearing be held following notice to all parties.

A hearing was held on June 25, 1986 with appearances entered on behalf of Consolidated Rail Corporation (Conrail), SEPTA, the Township, the Pennsylvania Department of Transportation (DOT), and the Commission. No appearance was entered on behalf of Bucks County. In addition, several members of the public attended and testified as to the need for the bridge being in service.

At the hearing, testimony was presented by Conrail, SEPTA and DOT indicating that each had performed little or no maintenance on the bridge in the past and that they were presently unwilling to do so unless ordered by the Commission. The Township presented testimony that it had never performed any maintenance or repair on the bridge and that it had taken back Rockhill Road from DOT under the State Road Turnback Program. However, the takeback agreement executed between the parties specifically excluded the maintenance, replacement and repair of all bridges, in particular, this rail highway crossing.

The ALJ issued a Recommended Decision which ordered that the bridge be repaired temporarily and that it ultimately be replaced with a new bridge. In the Order, the ALJ apportioned the cost of repairs to the existing bridge and construction of a new bridge exclusively between Conrail, SEPTA and the Township. Conrail was allocated the primary cost of repairing the old bridge until a new one could be constructed. SEPTA and the Township were each ordered to pay a sum of $3,000.00 as their respective share of the costs of repair on the old bridge, which was estimated at a cost of $30,000. SEPTA and the Township were allocated the cost of reconstruction of the new bridge with the Township being liable for 90% of those costs. In the Recommended Decision, the ALJ proposed a scenario whereby an amendment[1] to what is commonly known as the Highway-Railroad and Highway Bridge Capital Budget Act for 1982-1983,[2] would provide for 80% payment of the new bridge costs and the Township and SEPTA would each pay 10% of the remaining unfunded costs. The Order imposing 90% liability upon the Township apparently assumed 80% reimbursement under the State Bridge Bill.

The Township filed Exceptions to the Recommended Decision of the ALJ objecting to the apportionment of costs. On April 24, 1987, the Commission adopted the Recommended Decision of the ALJ and denied the Exceptions. The Township timely appealed to this Court.

On appeal to this Court, the Township raises three issues: whether the Commission erred in ordering that 90% of the reconstruction costs of the Rockhill Road Bridge be assessed upon the Township; whether the

---

[1] This amendment, the Act of July 9, 1986, P.L. 597, will be referred to as the State Bridge Bill for purposes of this opinion.

[2] Act of December 8, 1982, P.L. 848, *as amended*.

Commission erred in failing to apportion any bridge reconstruction costs to DOT; and whether the Commission denied the Township's constitutional due process rights by summarily adopting the Recommended Decision of the ALJ without notice to the Township and by relying upon the funding available under the State Bridge Bill as substantial evidence in apportioning bridge reconstruction costs.

Our scope of review is limited to determining whether the Order of the Commission violates the Township's constitutional rights, involves an error of law or is unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704. *See also Erie Lackawanna Railway Co. v. Pennsylvania Public Utility Commission,* 2 Pa. Commonwealth Ct. 396, 278 A.2d 188 (1971).

### *Reconstruction Costs Allocation*

Section 2702(b) of the Public Utility Code, 66 Pa. C. S. §2702(b), vests the Commission with the exclusive power to allocate the costs of bridge reconstruction. It provides in pertinent part:

(b) *Acquisition of property and regulation of crossing.*—The commission is hereby vested with exclusive power to appropriate property for any such crossing, . . . and to determine and prescribe, by regulation or order, the points at which, and the manner in which, such crossing may be constructed, altered, relocated, suspended or abolished, and the manner and conditions in or under which such crossings shall be maintained, operated and protected to effectuate the prevention of accidents and the promotion of the safety of the public.

In apportioning costs in highway-rail crossing cases, the Commission is not limited to any fixed rate but

takes all relevant factors into consideration, with the fundamental requirement being that its order be just and reasonable. *See Department of Transportation v. Pennsylvania Public Utility Commission,* 79 Pa. Commonwealth Ct. 266, 469 A.2d 1149 (1983).

The Township argues that the Commission's allocation of 90% of the costs of bridge reconstruction to it is unjust and unreasonable. In support of this argument, the Township indicates that this allocation could ultimately bankrupt the Township and that the Commission did not consider the Township's ability to pay in allocating costs. However, the financial ability to pay is not controlling or determinative of the issue of allocation of costs by the Commission. *See Department of Highways v. Pennsylvania Public Utility Commission,* 190 Pa. Superior Ct. 1, 151 A.2d 850 (1959). Furthermore, this Court noted in *Department of Transportation,* 79 Pa. Commonwealth Ct. at 275, n.12, 469 A.2d at 1154, n.12, that the allocation of bridge replacement costs to a locality, more specifically to boroughs and a county, was not unjust and unreasonable, as the governing bodies had sufficient revenue-raising ability to offset any deficit created. In light of these decisions, the Township's argument must fail.

The Township further alleges that the Commission's apportionment of costs is not supported by substantial evidence because the Commission failed to consider the total costs of bridge reconstruction. Testimony was presented by Conrail concerning costs of the fully reconstructed bridge. The Township alleges in its brief to this Court that the actual cost of a new bridge would far exceed that figure. However, the Township presented no evidence which would substantiate its allegations of this increased cost. Therefore, we reject this argument as meritless.

The Township also contends that the Commission's allocation of costs for temporary repair of the old bridge is wasteful. The Commission's Order calls for the repair of the old bridge to operate at a 7-ton limit during the time period covering planning and construction of a new bridge. The Township argues that the old bridge cannot be safely reopened and therefore, that it is needless and wasteful to order the parties to make expenditures for repairing the old bridge which will continue to be a hazard to the travelling public during construction of the new bridge. As noted above, the Commission is vested with the exclusive power to dictate the manner in which rail highway crossings may be constructed or altered. Consequently, we must yield to the Commission's decision to repair the old bridge, as it is not unreasonable under the circumstances.

The Township further argues that SEPTA and Conrail are the parties primarily responsible for the deterioration of the bridge and therefore should be assessed the total reconstruction cost. It contends that the ALJ and the Commission failed to truly isolate the parties whose actions and omissions led to the deterioration of the bridge. The record indicates that Conrail operates and maintains the rail line running under this bridge at its own expense by agreement with SEPTA. Conrail took over the rail lines from Reading Railroad in 1976. Conrail then conveyed the lines to SEPTA in 1982 and SEPTA leased back a right-of-way in order to allow Conrail to operate three round trip freight trains per week. Conrail has done no repairs on the bridge other than construction of a temporary railing replacement after the car accident on the bridge. However, Conrail's testimony did indicate that its trains had struck the underside of the bridge and caused damages thereto.

Our review of the record indicates that the Commission did not fail to consider deferred or negligent main-

tenance of the bridge. As required, the Commission considered all relevant factors and issued an order which was not unreasonable or unjust. Therefore, we are constrained to conclude that Conrail and SEPTA cannot be made to assume full maintenance, repair, and replacement costs of the bridge.

## Allocation of Costs to DOT

The Township's second argument on appeal is that the Commission erred in failing to apportion any costs to DOT. The Township and DOT entered into an agreement in 1984 whereby the Township took back twelve miles of state road contained within the Township's bounds. This agreement specifically excluded the maintenance of the Rockhill Road Bridge. The Township contends that by entering into this agreement, DOT retained some responsibility for this bridge and that, therefore, it should be assessed the Township's share of any unfunded costs.

It is undisputed that DOT was responsible for the maintenance and upkeep of Rockhill Road prior to its turnback to the Township in 1984. At the hearing, DOT's engineer admitted that DOT has the duty under Federal law to inspect local bridges every two years. However, the witness could not indicate whether or not the bridge in question had been inspected. The Township alleges that the failure to inspect and discover the deterioration of the bridge coupled with the Township's initiative in closing the bridge and bringing the condition of the bridge to the attention of the Commission were equitable factors not adequately considered by the Commission in apportioning costs. It contends that a fair and reasonable apportionment of unfunded costs would place responsibility upon DOT despite the fact that Rockhill Road is not currently a state road. *See Department of Transportation v. Pennsylvania Public Util-*

*ity Commission*, 76 Pa. Commonwealth Ct. 525, 464 A.2d 645 (1983). DOT does have a duty under Federal law to inspect bridges in this Commonwealth, but that duty does not extend to the repair or replacement of those bridges. The record reveals that the Commission considered this factor in apportioning costs and we cannot conclude that the Commission's failure to allocate costs to DOT was unjust or unreasonable. Therefore, the Township's argument is meritless.

### Due Process Violations

The final issue raised by the Township is whether its due process rights were violated by the Commission's adoption of the Recommended Decision of the ALJ without notice to the Township and by the Commission's reliance upon the State Bridge Bill in apportioning bridge reconstruction costs.

The Commission, as an administrative body, is bound by the requirements of due process. *See Cohen v. Pennsylvania Public Utility Commission*, 78 Pa. Commonwealth Ct. 545, 468 A.2d 1143 (1983), *aff'd sub nom. Barasch v. Pennsylvania Public Utility Commission*, 507 Pa. 561, 493 A.2d 653 (1985). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *See Barasch v. Pennsylvania Public Utility Commission*, 104 Pa. Commonwealth Ct. 52, 521 A.2d 482 (1987).

The Township contends that it was never given notice of the public meeting at which the Commission adopted the Recommended Decision of the ALJ. The Township further alleges error in the Commission's failure to give any notice that it considered 'the State Bridge Bill in apportioning costs.

The record indicates that the Commission complied with the rules concerning notice of its public meeting.[3] Notice of the meeting was published in a newspaper of general circulation a full two weeks prior to the actual meeting date. Notice of the meeting was also posted at the Commission's principal office. Copies of the meeting agenda were available to the news media and the general public.

As for the consideration of the State Bridge Bill, it is a matter of public record. The Township alleges that the Commission should have provided it with notice that the Commission was considering this legislation in reaching a decision on allocation of costs. The Township cites the case of *City of Erie v. Pennsylvania Public Utility Commission,* 41 Pa. Commonwealth Ct. 194, 398 A.2d 1084 (1979), for the proposition that when an adjudicating body is considering specified information, notice must be given to the parties of record. However, we do not consider this legislation the type of "specified information" which was considered in *City of Erie.* In that case, this Court held that:

> Before an administrative agency in an adjudication can base its findings on *information contained in the records of other cases decided by itself,* it must appear on the record that notice was given to the parties of record and that the adjudicating body is considering specified information. (Emphasis added.)

*Id.* at 197, 398 A.2d at 1086.

Clearly, the State Bridge Bill is not information contained in the record of a case heard before the Commission, but instead is a matter of public record to which

---

[3] Section 279 of the Sunshine Act, 65 Pa. C. S. §279, outlines the requirements necessary to effectuate adequate notice of public meetings.

the Township had access prior to the Commission's decision. The Township had every opportunity to present testimony and cross-examine witnesses concerning the existence or non-existence of funding from this bill at the hearing before the ALJ. The proposition set forth in *City of Erie* is inapplicable to this matter and we consider that the Order of the Commission in no way violated the due process rights of the Township.

All factors considered, we must conclude that the Order of the Commission was just and reasonable. Accordingly, the Order of the Commission is affirmed.

## ORDER

AND NOW, this 6th day of April, 1988, the Order of the Pennsylvania Public Utility Commission in the above-captioned matter is hereby affirmed.