634 A.2d 281

**COUNTY OF DAUPHIN, Petitioner,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1993.

Decided Nov. 15, 1993.

650

Jeffrey L. Troutman, Asst. Sol., for petitioner.

John Herzog, Asst. Counsel, for respondent.

Lillian S. Harris, for intervenor, Diamond "S" Cab Co.

Lloyd Persun, for intervenor, Harrisburg Taxi Cab Co.

Before PALLADINO and KELLEY, JJ., and LORD, Senior Judge.

KELLEY, Judge.

On January 27, 1988, George Stouffer and Robert Sellers filed applications with the Pennsylvania Public Utility Commission (PUC) on behalf of their partnership, the Diamond "S" Cab Company (Diamond), for emergency temporary authority, temporary authority, and permanent authority to transport persons between points in Dauphin County and from points in Dauphin County to points within five miles of the Dauphin County line. Diamond made these applications in connection with services it provides as a subcontractor of the

Dauphin County Transportation Department (department). Harrisburg Taxicab & Baggage Company, doing business as Yellow Cab (Yellow Cab) filed a protest to the applications.

The services at issue are shared-ride transportation services provided to senior citizens by the department. Funding for these services is provided pursuant to a state block grant medical assistance program administered by the state Department of Public Welfare and a lottery-funded program administered by the Pennsylvania Department of Transportation (DOT). With one exception, the persons who use these services are residents of Dauphin County.[1] However, it is undisputed that some of the users of the service are transported to points outside of the county. These extraterritorial trips are limited to medical appointments.

After Diamond had filed its applications, the department received a memorandum from DOT stating that DOT had changed its policy such that a county receiving funds under the lottery-funded program which maintained substantial control of the service provided could subcontract with transit operators who did not have a PUC certificate. Previously, DOT had required the subcontractors to have a PUC certificate. According to Diamond's brief, the applications were originally filed because of the prior policy.

Subsequent to this policy change, Diamond amended its application to specify that it wished to transport persons as a subcontractor of the Dauphin County Transportation Department. Diamond concurrently filed a motion to dismiss its application asserting that the PUC lacked jurisdiction over the proposed subcontracting service.

After considering the application, an administrative law judge (ALJ) concluded that the PUC lacked jurisdiction over the proposed service and dismissed the application. The PUC adopted this decision by order entered October 27, 1989. Yellow Cab appealed this decision to this court and, in an

---

1. The PUC found that one individual who is not a resident of the county is transported on a one-way trip originating in Dauphin County. This trip is performed by the department at the explicit request of the Chief of the Lottery Division at DOT.

unreported opinion, we vacated and remanded for further fact finding with respect to whether the proposed service would be conducted exclusively within the county's corporate limits.[2]

Following a hearing upon remand, the ALJ again issued a decision dismissing the application due to a lack of jurisdiction. The PUC entered an order on June 10, 1992, which adopted in part and overruled in part the ALJ's decision. The PUC order made the County of Dauphin a party to this proceeding and determined that services rendered by the county and Diamond which exceed the geographical boundaries of Dauphin County are subject to PUC jurisdiction. The county has appealed this determination and Diamond has intervened.

The county argues that (1) the services are not extraterritorial within the meaning of the Public Utility Code (Code),[3] and (2) the PUC lacks jurisdiction because the services are regulated by other agencies.

In making our prior decision, this court cited section 1102(a)(5) of the Public Utility Code (Code), 66 Pa.C.S. § 1102(a)(5), which requires a certificate of public convenience for "any municipal corporation to acquire ... or begin to operate, any plant, equipment, or other facilities for the rendering or furnishing to the public of any public utility service beyond its corporate limits...." The court also cited section 1501 of the Code, 66 Pa.C.S. § 1501, which provides that "[a]ny public utility service being furnished or rendered by a municipal corporation beyond its corporate limits shall be subject to regulation and control by the commission as to service and extensions, with the same force and in like manner as if such service were rendered by a public utility."

The county argues that the services in question are not extraterritorial within the meaning of the Code because all of the users are Dauphin County residents. The county states that the reason for regulating extraterritorial service is so that the municipality cannot discriminate against users who are

2. The prior appeal to this court was docketed at 2237 C.D.1989.
3. 66 Pa.C.S. §§ 101–3315.

outside of the corporate limits. We have examined the cases cited by the county and we agree with its argument.

The county first cites a Superior Court case, *State College Borough Authority v. Pennsylvania Public Utility Commission*, 152 Pa.Superior Ct. 363, 31 A.2d 557 (1943), in which the court engaged in the following discussion concerning the predecessor to the Code which contained language similar to the language cited above:

> Prior to the Public Utility Law of 1937, the Public Service Commission had no jurisdiction over a municipally operated public utility whether or not it rendered service beyond its corporate limits.... A realistic appreciation of the temptation to discriminate against the outside users impelled the change. When a municipality limits its service to its own voters the power of the ballot is perhaps an adequate protection. The officials who manage the property are elected by and, therefore, beholden to the consumers for their power to manage.... It is the consumer outside the corporate limits, who has no right to participate in the governmental affairs of the municipality and, therefore, in its selection of management, who needs protection against the natural inclination of management to favor its constituents at the expense of the outsider who has no voice.

*Id.* at 374, 31 A.2d at 562 (citations omitted). Thus, the purpose of subjecting a municipally operated public utility which renders service beyond its corporate limits to the jurisdiction of the PUC is to protect users of the service who are not residents of the municipality. This rationale does not apply to the present case where the users of the service are residents of Dauphin County. Although it did not say so explicitly, the court in *State College* implicitly defined the phrase "rendered service beyond its corporate limits" as referring to the offering and sale of such service to users who are not residents of the municipality.

In *Borough of Ridgway v. Pennsylvania Public Utility Commission*, 83 Pa.Commonwealth Ct. 379, 480 A.2d 1253

(1984), this court stated, in analyzing whether the PUC had jurisdiction under § 1501 of the Code, that

> The primary consideration in making such a determination is whether the municipality holds itself out, by express or implied terms, as a supplier of the utility service to the public beyond its boundaries, as a class or a limited portion thereof, to the extent that the capacity of the municipality's utility permits.

*Id.* at 387, 480 A.2d at 1257. The court went on to conclude that the borough was subject to the PUC's jurisdiction and was required to obtain a certificate of public convenience because the borough provided sewer service to customers in the neighboring township. It is instructive that the court, while noting that the borough's sewage disposal plant was located in the neighboring township, did not cite this fact as being relevant to the question of jurisdiction. It was not the fact that some of the utility's activities occurred in the neighboring township which conferred PUC jurisdiction. Instead it was the fact that the utility sold its services to residents of the neighboring township which conferred jurisdiction.

In the present case, there is no evidence that the county holds itself out as a supplier of transportation services to the public beyond its boundaries.[4] Under the holdings of *State College* and *Borough of Ridgway,* the county is not "rendering or furnishing to the public ... [a] utility service beyond its corporate limits" if it is not offering such service to persons beyond its corporate limits. We therefore hold that the PUC erred in concluding that it has jurisdiction in this matter.[5]

---

**4.** That there is one nonresident who uses the service by special arrangement does not prove that the county holds itself out as a supplier of the service to the public beyond its boundaries.

**5.** The PUC argues that such a holding will contradict our prior decision in this matter. However, the prior order merely remanded for further fact finding as to whether or not the proposed subcontracting service would be contained within the county's corporate limits. The opinion did not attempt to analyze the case law and define what activities would constitute "rendering or furnishing to the public of any public utility service beyond its corporate limits...."

Accordingly, we will reverse the PUC decision.[6]

## ORDER

NOW, this 15th day of November 1993, the order of the Pennsylvania Public Utility Commission, dated October 16, 1992, at No. A–00106732, F003, is reversed.

6. Because of our disposition of the county's first argument, we need not address the county's additional argument that the PUC lacks jurisdiction because the services in question are regulated by other agencies.