507 A.2d 433

Duquesne Light Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued May 8, 1985, before President Judge CRUMLISH, JR., Judges ROGERS, CRAIG, MACPHAIL, DOYLE, BARRY and PALLADINO.

*Charles E. Thomas,* with him, *Patricia Armstrong, Charles E. Thomas, Jr.,* and *Thomas T. Niesen, Thomas & Thomas,* for petitioner.

*Louis G. Cocheres,* Assistant Counsel, with him, *John A. Levin,* Assistant Counsel, *Daniel P. Delaney,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Irwin A. Popowsky,* with him, *Scott J. Rubin,* Assistant Consumer Advocates, *David M. Barasch,* Consumer Advocate, and *Kenneth R. Pepperney,* for intervenor, Office of Consumer Advocate.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., March 26, 1986:

Duquesne Light Company (Duquesne) appeals four Pennsylvania Public Utility Commission (Commission) orders,[1] the cumulative effect of which was to direct the

---

[1] The appeal docketed at No. 3102 C.D. 1981 is from orders dated February 20, 1981 and November 20, 1981. The appeal docketed at No. 1853 C.D. 1983 is from orders dated December 13, 1982 and June 16, 1983. This Court granted Duquesne's request to consolidate these appeals.

refund of over $13.6 million in net energy clause[2] charges and interest to its customers. We vacate the Commission's order establishing Duquesne's liability for the refund, and we remand for further proceedings.

The federal Nuclear Regulatory Commission (NRC) ordered Duquesne's Beaver Valley Power Station Unit No. 1 (Beaver Valley I) shut down on March 13, 1979, for re-evaluation of the seismic design of its safety piping. In July 1979 the Commission instituted an investigation into the rate-making consequences of this shutdown.[3] Duquesne petitioned to terminate this investigation when Beaver Valley I restarted on August 8, 1979. The Commission denied this petition, explaining that the focus of the probe would center on the impact of past and future Beaver Valley I outages upon Duquesne's rates and net energy clause charges.

Following several days of hearings on this investigation, an administrative law judge (ALJ) issued a recommendation that no rate or net energy clause adjustments were warranted by the shutdown of Beaver Valley I. He based this decision on his conclusion that the seismic design of Beaver Valley I's piping was not imprudent. By order dated February 20, 1981, the Commission rejected this recommended decision as to the net energy clause charges, reasoning that the prudence question turned on whether Duquesne failed to take some responsive action which could have averted the NRC's shutdown order. It concluded that Duquesne was liable for a refund of replacement power cost charges attributed to the shutdown because it had not

[2] The net energy clause is a billing device allowing for automatic adjustments to customer billings based upon variations in the cost of fuel used in generating electricity. Section 1307 of the Public Utility Code, 66 Pa. C. S. §1307.

[3] The Commission docketed this investigation at No. I-79070314.

met its burden of proving that the cost of this replacement power was prudently incurred. The Commission did not at this time order a specific refund. Instead, it remanded to its Bureau of Audits for a recommendation of a refund amount.

Upon reconsidering its February 1981 ruling, the Commission issued a November 20, 1981 order remanding the record to an ALJ for further hearings on (1) whether Duquesne should be held responsible for the entire duration of the March 13-August 8, 1979 shutdown, (2) the replacement fuel costs for the shutdown period caused by the imprudent management of Duquesne, (3) the length of time over which monies would be refunded, and (4) whether Duquesne should pay interest on the refund amount and, if so, at what interest rate. Upon certification of the supplemental record, the Commission, in an order dated December 13, 1982, found that (1) Duquesne was responsible for the entire length of the shutdown, (2) Beaver Valley I had an 810 megawatt capacity, (3) the plant would have had an eighty-percent capacity factor during the time of the shutdown, (4) the cost of the replacement power was $14.199 per megawatt hour, and (5) the cost of the nuclear fuel expended had there been no shutdown would have been $2.764 per megawatt hour. It concluded that interest should accrue at the rate specified in Section 1312(a) of the Public Utility Code[4] —six percent per annum. Based on its refund calculation formula,[5] the

---

[4] 66 Pa. C. S. §1312(a).

[5] The formula is as follows:

(megawatt capacity x capacity factor) x (length of outage) x (replacement power cost per megawatt hour—nuclear fuel cost per megawatt hour) x (percentage of Duquesne ownership (47.5))

It yielded a product of $12,501,950, from which a $1,000,000 recoupment of income tax expenses was offset to arrive at the $11,501,950 principal sum.

Commission ordered Duquesne to refund $13,600,401 in net energy clause charges to its customers ($11,501,950 in principal and $2,098,451 in interest). The refund was directed to be made over a two-year period. Finally, the order presented Duquesne with two alternate sets of guidelines for use in formulating a refund plan, both based upon actual customer usage.

Duquesne filed numerous comments challenging the legal soundness of the December 1982 order. A June 16, 1983 Commission opinion and order addressed these comments. The Commission concluded that (1) the issue of Duquesne's liability for the March 13-August 8, 1979 shutdown of Beaver Valley I had been decided in the February 1981 order, (2) Duquesne had received adequate notice of the charges against it, (3) its investigation of Beaver Valley I's shutdown was not preempted by federal jurisdiction over safety aspects of nuclear facilities, (4) the burden of proving prudent management was properly placed upon Duquesne, (5) Duquesne had waived any contention that the shutdown was unreasonably extended by the NRC, (6) Duquesne was not entitled to a credit for a refueling shutdown, (7) the fact that the replacement power was generated from Duquesne's reserve capacity did not affect the liability determination, (8) the eighty-percent capacity factor was a reasonable estimate, (9) the $2.764 per megawatt hour fuel cost figure was an appropriate figure, (10) a finding of excessive earnings is not a necessary prerequisite for a refund order, and (11) the two-year refund period was proper. The Commission modified its December 1982 order to require adherence to the second of the two alternative refund guidelines set forth in that order.[6]

---

[6] These guidelines require that:

1. The refund of principal and interest of $13,600,401, first, is to be allocated to each rate classification based up-

This Court's review of Commission orders is limited to determining whether constitutional rights were violated, an error of law was committed, or the Commission's findings of fact or orders were unsupported by substantial evidence. *Pike County Light and Power Co. v. Pennsylvania Public Utility Commission*, 87 Pa. Commonwealth Ct. 451, 487 A.2d 118 (1985).

On appeal, Duquesne initially contends that the Commission's investigation of Beaver Valley I's 1979 shutdown was preempted by the federal NRC's exclusive jurisdiction over regulation of nuclear plant safety. It argues that the Commission is intruding upon the NRC's regulatory domain by probing the prudence of Beaver Valley I's seismic design. We disagree.

Although the shutdown was for safety considerations, the entire object of the Commission's investigation was to determine whether the circumstances surrounding the shutdown necessitated adjustments to Duquesne's rate base or net fuel clause charges. It is well-settled that economic regulation of nuclear power generation is within the jurisdiction of state public utility commissions and, therefore is not preempted by the federal sovereign's exclusive responsibility for nuclear safety. Section 271 of the Atomic Energy Act of 1954, 42

---

on the ratios which sales to each rate class bears to total sales during the specified period;

2. Second, the refund, allocated in 1 above to Rate L customers, is to be suballocated to individual Rate L customers based upon the ratio which sales to each customer bears to total sales to the rate class during the specified period;

3. The allocated amounts determined pursuant to 1 and 2 shall be refunded to customers within each rate classification, and to individual customers within Rate L, by means of a credit per kilowatt hour designed to accomplish the individual rate class and sub-class refunds within two years....

Reproduced Record, p. 96a.

U.S.C. §2018 (West 1973); *Pacific Gas and Electric Co. v. State Energy Resources Conservation and Development Commission*, 461 U.S. 190 (1983).[7] Moreover, the investigation focused not upon the safety qualities of Beaver Valley I, but upon whether Duquesne acted reasonably in response to NRC concerns over the plant's safety piping system, and in so doing could not have prevented the shutdown. This is confirmed by the February 1981 Commission order rejecting the ALJ's emphasis on the prudence of Beaver Valley I's seismic design.

Duquesne contends that the Commission violated due process by adjudicating its rights in a purely investigatory proceeding. We disagree. The Commission's investigation was consolidated with two previously filed actions—a petition by the Commission's trial staff and a complaint brought by the City of Pittsburgh[8]—seeking to prevent collection of replacement fuel costs resulting from Beaver Valley I's March-August 1979 shutdown. The proceedings were thus not solely fact-gathering in nature; Duquesne knew that specific relief was sought and would be in turn adjudicated by the Commission.

The next contention Duquesne makes is that the Commission failed to give it adequate notice that liability would be determined by examining the reasonableness of its actions immediately preceding the March 13, 1979 NRC shutdown order. We conclude that

---

[7] Duquesne also contends that the doctrine of primary jurisdiction necessitates deference to an NRC determination of seismic design quality. This contention lacks merit. Because the Commission's investigation concerned Duquesne's lack of prudence in responding to NRC inquiries on Beaver Valley I's seismic design, not the merits of this design itself, the NRC's safety expertise was not pertinent to the resolution of this inquiry.

[8] The Commission docketed the trial staff's petition at No. P-79040173 and the City of Pittsburgh's complaint at No. P-79040174.

Duquesne was not given adequate notice of the specific conduct being investigated, and hence its defense was gravely prejudiced.

Our review of the record reveals that the various orders, complaints, and conferences which preceded the taking of evidence of liability are fatally vague in that they fail to disclose the precise role of Duquesne in the shutdown considered relevant to a refund determination. The order commencing the investigation merely stated that it was "instituted to determine if any, or to what extent, adjustments should be made to Duquesne Light Company's base rates and net energy clause to reflect the impact of the extended outage at Beaver Valley I...."[9] Neither of the administrative actions filed by the Commission's trial staff and the City of Pittsburgh referred to Duquesne's conduct in response to the NRC inquiries as a basis for their refund requests. The prehearing conferences held by the ALJ to narrow the issues never touched upon Duquesne's behavior immediately preceding the shutdown, nor did the ALJ ever rule on the precise issues to be resolved. Most persuasive, however, is the ALJ's own apparent misconception as to the determinative question of liability: Having reviewed the record, he believed that the issue of prudence—and, ultimately, liability—solely concerned Duquesne's actions pertaining to the design and construction of Beaver Valley I's safety piping.

Due process in matters before the Commission requires that a party be afforded a reasonable opportunity to know the nature of its opponents' contentions so that it can prepare a suitably responsive answer. *Smith v. Pennsylvania Public Utility Commission*, 192 Pa. Superior Ct. 424, 162 A.2d 80 (1960). This requirement extends to the Commission's investigatory proceedings. *See Armour Transportation Co. v. Pennsylvania Public*

---

[9] *Reproduced Record, p. 5a.*

*Utility Commission,* 138 Pa. Superior Ct. 243, 10 A.2d 86 (1939). We hold that the Commission violated due process when it assessed liability by determining an issue which Duquesne had not been afforded a reasonable opportunity to address at the evidentiary hearings.

Accordingly, the Commission's February 20, 1981 order establishing Duquesne's responsiblity for the shutdown of Beaver Valley I is vacated. We will remand this case to the Commission for evidentiary hearings on the issue of whether Duquesne acted prudently in response to NRC inquiries on the seismic design of Beaver Valley I's safety piping, by taking all reasonable steps to avert a shutdown.[10] Because these proceedings commenced more than six years ago, we are directing the Commission to issue a new decision on Duquesne's liability and certify it to this Court within one hundred eighty (180) days.[11]

---

[10] On remand, Duquesne will have the burden of proving that it prudently responded to the NRC queries. We find no merit in Duquesne's contention that the Commission erred by imposing on it this evidentiary burden. Section 315(a) of the Public Utility Code, 66 Pa. C. S. §315(a), places upon the public utility the burden of proving that its existing rates are just and reasonable. This burden of proof is not per se impossible to meet, and therefore, contrary to Duquesne's view, does not contravene due process.

We also reject Duquesne's contention that a refund in these circumstances would violate the "Commission-made rates" doctrine. This doctrine, with certain exceptions, prevents the Commission from ordering refunds of monies collected by a utility under authority of a prior Commission-approved tariff. Monies collected from customers pursuant to a net energy clause adjustment do not carry the Commission's antecedent imprimatur, and thus the Commission-made rates doctrine does not apply to requests for refunds of these revenues. *Metropolitan Edison Co. v. Pennsylvania Public Utility Commission,* 62 Pa. Commonwealth Ct. 460, 437 A.2d 76 (1981).

[11] Duquesne also contends that the Commission improperly refused to consider opinion testimony on seismic analysis and its

ORDER

The Pennsylvania Public Utility Commission order, dated February 20, 1981, is vacated insofar as it applies to the cases docketed at Nos. I-79070314, P-79040173 and P-79040174. These cases are remanded to the Commission for evidentiary hearings to determine whether Duquesne Light Company acted prudently in response to the Nuclear Regulatory Commission's inquiries into the viability of the seismic design for the safety piping at its Beaver Valley Power Station Unit No. 1. The Commission shall determine this question and certify its decision to this Court within ninety (90) days of this Order's date.

Jurisdiction retained.

AMENDING ORDER

Petitioner's and Respondent's joint application for modification of order is granted. Accordingly, this Court's Order entered March 26, 1986, is amended to read as follows:

The Pennsylvania Public Utility Commission order, dated February 20, 1981, is vacated insofar as it applies to the cases docketed at Nos. I-79070314, P-79040173 and P-79040174. These cases are remanded to the Commission for evidentiary hearings to determine whether Duquesne Light Company acted prudently in response to the Nuclear Regulatory Commission's inquiries into the viability of the seismic

___

decisions thereon. This contention is no longer relevant since the issue of prudence to be resolved on remand does not concern the adequacy of Beaver Valley I's seismic design.

As we are remanding for a re-determination of Duquesne's liability for a refund, we will not address Duquesne's remaining contentions, which relate to the calculation of the refund amount.

design for the safety piping at its Beaver Valley Power Station Unit No. 1. The Commission shall determine this question and certify its decision to this Court within one hundred and eighty (180) days of this Order's date.

Jurisdiction retained.