647 A.2d 653

**HONEY BROOK WATER COMPANY, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 11, 1994.

Decided Aug. 25, 1994.

142

Craig A. Doll, for petitioner.

Stanley E. Brown, Asst. Counsel, for respondent.

Before CRAIG, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

DOYLE [1], Judge.

Honey Brook Water Company has appealed a decision of the Pennsylvania Public Utility Commission (PUC) which denied Honey Brook's exceptions to the order of the Administrative Law Judge (ALJ) which had sustained the formal complaints of Margaret Shulzitski, Mr. and Mrs. Raymond J. Sakrewsky, Edward T. and Arlene S. Burgess and Bonita Hoats (collectively, Complainants).

### Facts

On April 15, 1992, Complainants filed formal complaints against the Honey Brook Water Company which were accom-

---

1. This case was reassigned to the author of this opinion on June 1, 1994.

panied by a petition signed by twenty-six (26) residents of the Spring Mountain area, known as the "Luceno" development, in Kline Township, Schuylkill County. These complaints and the petition alleged that the water company was providing inadequate water pressure, and sometimes no water pressure at all, for ordinary household purposes and for fire protection.[2] The complaints and the petition of the residents made it quite clear that the residents were asking for PUC intervention to obtain relief from "this long overdue problem" of inadequate water supply.

On May 18, 1992, Honey Brook filed its answer to the complaints in which it admitted that there was an ongoing pressure problem for its Spring Mountain customers. In its formal answer, Honey Brook itself brought up the existence of an earlier PUC order, dated May 16, 1989, which had directed Honey Brook to "complete the Spring Mountain well, located in Kline Township, Schuylkill County, in an area known as the Luceno development, . . . [and] have the well in operation as an integral part of [Honey Brook's] existing distribution system by May 31, 1989. . . ." (PUC Order May 16, 1989, Paragraph (J).) Included in that order, entered three years prior to the present complaints being filed, was also the approval of an annual rate increase in the amount of $125,000 to complete the work on the Spring Mountain well. This rate increase was granted specifically for the purpose of enabling Honey Brook to complete the well to alleviate the problem of low or nonexistent water pressure. No stay or extension of that order was ever sought by Honey Brook, and, to the contrary, Honey Brook notified the PUC on June 2, 1989, that the well was expected to be completed and operational by July

2. ALJ George M. Kashi found that these customers of Honey Brook had been experiencing low water pressure since at least 1980 and perhaps as far back as 1974. (Finding of Fact No. 3.) He further found that although Kline Township paid Honey Brook $7,000 per year for fire protection, the Township was forced "to bring tankers in from different areas of the township since there is little or no water pressure available at the fire hydrants." (Finding of Fact No. 6.) At the public hearing held by the ALJ, the complainants testified that they had almost no water pressure at all between the hours of 8 and 10 P.M. (Finding of Fact No. 8.)

15, 1989. In fact, the well was never completed, despite the fact that the utility had received additional revenues in the amount of $375,000 over a period of three years to complete it. Honey Brook acknowledged that fact in its answer. Further, Honey Brook alleged in its answer that the reason for the company's failure to complete the well was "inadequate rate relief from the Public Utility Commission" and that if the PUC would grant its planned future rate increase it would now complete the Spring Mountain well.[3]

After a hearing was held on July 1, 1992, the ALJ sustained the complaints concluding, first, that Honey Brook had violated Section 1501, of the Public Utility Code (Code), 66 Pa.C.S. § 1501 for failure to furnish adequate and reasonable water service,[4] and, second, that Honey Brook was also in violation of the prior PUC order dated May 16, 1989 which, of course, had likewise ordered the installation of a new well. The ALJ found that even though Honey Brook had collected the $125,-000 annual rate increase for three years, the Spring Mountain well had never been completed despite Honey Brook's assurances that the well would be operational no later than July 15, 1989.[5] Accordingly, in response to the present complaints, the

3. Honey Brook also answered that it had begun to drill the Spring Mountain well but, due to ongoing financial problems, was unable to complete the project. Honey Brook further averred that it suffered a net operating loss for the year ended December 31, 1991; that it was unable to secure financing for capital improvements; that its sole stockholder, Beltrami Enterprises, Inc., was presently in Chapter 11 bankruptcy; *that it needed further rate relief and at such time that the relief was granted, it planned to complete the Spring Mountain well.*

4. Section 1501 of the Code states:

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission....

66 Pa.C.S. § 1501.

5. The ALJ stated in the discussion section of his order that:

ALJ ordered Honey Brook to have the Spring Mountain well in operation as an integral part of its distribution system within forty-five (45) days of the service date of the PUC's final order. The ALJ recommended that if Honey Brook failed to again comply with the PUC's directive to build the Spring Mountain well, a $100 per day civil penalty would be assessed for the first week of noncompliance and a $200 per day civil penalty would be assessed for the second week of noncompliance.

Because of the nature of Honey Brook's present appeal, the pertinent portion of the ALJ's order is recited verbatim and is as follows:

1. *The Complaint of Margaret Shulzitski, et al. be and is hereby sustained.*

2. Honey Brook Water Company shall, within forty-five (45) days of the service date of this Order, have the Spring Mountain well in operation as an integral part of the Company's existing distribution system as directed by this Commission in the May 16, 1989 order at Docket R–881045. . . .

3. Should the Company fail to comply with . . . Paragraph No. 2 above, the Company shall forfeit a civil penalty of $100 per day during the first week of noncompliance; $200 per day during the second week of noncompliance; and so on until such time as the Company has complied or the civil penalty has reached a maximum of $200,000.

The facts in this matter are undisputed. Honey Brook prior to 1988 failed to provide adequate service, by reason of low or no water pressure, to its ratepayers in Kline Township, Schuylkill County, in the Luceno development. By order entered May 16, 1989 . . . this Commission directed Honey Brook to complete the Spring Mountain well . . . and have it in operation by May 31, 1989. This mandate was part and parcel of a settlement by which this Commission granted [Honey Brook] a $125,000 annual base rate increase. In June of 1989 [Honey Brook's] counsel notified the Commission that it could not meet the May 31, 1989, deadline but would have the well in service by July 15, 1989.

Three years and $375,000 later, there is still no well, no water pressure for the isolated ratepayers and no fire protection for the community known as Luceno development.

(ALJ order dated July 10, 1992, at 6–7.)

4. The Law Bureau shall prepare, for issuance by the Commission, a rule to show cause requiring the Company to show cause why it should not be penalized for its *past failure* to comply with the Commission's Order at R–881045 *and for past violations* of Section 1501 of the Public Utility Code. 66 Pa.C.S.A. § 1501. Additionally, *the rule will require the Company to show cause why refunds should not be made to ratepayers since the Company vitiated the Settlement by its failure to comply with its terms.*

5. The Bureau of Audits shall ... determine the use of the $375,000 granted in the rate increase to said Company in 1989, including, but not limited to, monies flowing to any and all affiliated interests. Should any irregularities be found, the Law Bureau in conjunction with the Bureau of Audits will proceed to take whatever recourse there is available, including, but not limited to, intervention in the Chapter 11 bankruptcy filed by Beltrami Enterprises, Inc.

(ALJ's order dated July 10, 1992.) (Emphasis added.)

On August 6, 1992, Honey Brook filed exceptions to the ALJ's decision. By order entered December 1, 1992, the PUC adopted the ALJ's decision *in toto* and denied Honey Brook's exceptions concluding that the ALJ's decision was amply supported by substantial evidence in the record.

To summarize, then, the ALJ's initial decision and order was in two parts: one part addressing the present violations of Section 1501 of the Code (1992 complaint), and the other part addressing Honey Brook's past violation of the PUC's 1989 order.

On appeal,[6] Honey Brook argues that its procedural due process rights [7] were violated because:

**6.** Our scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed, or whether substantial evidence supports the PUC's findings, determination or order. *Cresco, Inc. v. Pennsylvania Public Utility Commission,* 154 Pa.Commonwealth Ct. 27, 622 A.2d 997, *petition for allowance of appeal denied,* 536 Pa. 633, 637 A.2d 292 (1993).

**7.** Due process in matters before the PUC requires that a party be afforded a reasonable opportunity to know the nature of its opponents'

[Honey Brook] was never placed on notice that its compliance with prior PUC Orders was at issue or that the PUC would impose fines on the basis of a *sua sponte* undertaking by the [ALJ]. *Significantly, the traditional method of notifying a Company of the potential imposition of civil penalties, a Rule to Show Cause, was [never] issued by the PUC nor did the Commission's Law Bureau participate in the proceeding.*

(Honey Brook's Brief at 7.) (Footnote omitted; emphasis added.) We shall address each portion of the PUC's order separately.

### Part I of the PUC's Order: The Rule to Show Cause for the Violation of the 1989 PUC Order

A cursory examination of the PUC's order reveals that the PUC did not impose a fine for a past violation of its order of May 16, 1989, as argued by Honey Brook. What the PUC did with regard to Honey Brook's past failure, *which Honey Brook itself injected into the proceedings,* was exactly what Honey Brook said the PUC should do, *viz.,* to issue a rule to show cause "why [Honey Brook] should not be penalized for its *past* failure to comply ... and for its *past* violations of Section 1501 of the Public Utility Code." Additionally, "the rule to show cause will require [Honey Brook] to show cause why refunds should not be made to ratepayers since the Respondent vitiated the Settlement by its failure to comply with its terms." Nowhere did the PUC in its order of December 1, 1992, either levy a present fine on Honey Brook or even threaten Honey Brook with a conditional fine for a past violation. Instead it offered Honey Brook notice and the opportunity to explain itself, which is the essence of due process.

The basic elements of procedural due process are "notice and opportunity to be heard and to defend in an

contentions so that it can prepare a suitably responsive answer. *Duquesne Light Co. v. Pennsylvania Public Utility Commission,* 96 Pa. Commonwealth Ct. 168, 507 A.2d 433 (1986).

orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause." *Wiley v. Woods*, 393 Pa. 341, 351, 141 A.2d 844, 849–850 (1958); *Carter v. Kubler*, 320 U.S. 243, 64 S.Ct. 1, 88 L.Ed. 26 (1943). For the violation of its past failure to install the Spring Mountain well, which the PUC found to be "an egregious breach of faith to its customers and this Commission," after it had agreed to install the well in exchange for its rate increase, the PUC ordered that a rule to show cause would issue requiring Honey Brook to show cause why refunds should not be made to its ratepayers. That process unquestionably comports with the requirements of procedural due process, *viz.*, notice, an opportunity to present evidence and cross-examine adverse witness, before an impartial tribunal. That is exactly what Honey Brook asserts should have been done, and is exactly what the Commission regulations provide for.[8] Honey Brook's rights in regard to the rule to show cause for the past violation of the 1989 order clearly were not violated.

### Part II of the PUC's Order: The 1992 Complaints

■ Honey Brook's procedural rights have also not been violated by the resolution of the 1992 complaints for violating Section 1501 of the Code.

■ First, in essence, what the complainants requested was relief from their problem of low to nonexistent water pressure. The fact that they did not specifically ask that Honey Brook

---

**8.** Section 5.31 of the PUC's Regulations, pertinently provides:

Whenever the Commission desires to institute a proceeding against a person under statutory or other authority, the Commission may commence the action ... by an order to show cause setting forth the grounds for the action.

52 Pa.Code § 5.31.

Likewise, Section 35.14 of the General Rules of Administrative Practice and Procedure provide that:

Whenever an agency desires to institute a proceeding against a person under statutory or other authority, the agency may commence the action by an order to show cause setting forth the grounds for the action.

1 Pa.Code § 35.14.

be penalized by the assessment of a fine is totally irrelevant.[9]

Second, the PUC's order imposed a **conditional** fine only for the company's **present** violations of Section 1501 of the Code, which was entirely proper.[10] The fact that the problem of the inadequate water pressure could be solved in 1992 by the same solution that would have also solved the problem in 1989—the installation of a well—is legally irrelevant.

Succinctly, in this case, the PUC ordered Honey Brook, because of its present violation of Section 1501 of the Public Utility Code, to do the following:

First: to furnish and maintain 'adequate, sufficient, safe and reasonable service,' and 'within forty-five (45) days ... have the Spring Mountain well in operations....' and,

Second: Should the Company fail to comply [with First above] ... the Company shall forfeit a civil penalty of $100 per day during the first week of noncompliance; $200 per day during the second week of noncompliance ... [up to a maximum of $200,000].

The argument that Honey Brook's failure to provide adequate service was the result of its noncompliance with the 1989 PUC order, misses the mark entirely; Honey Brook's "failure" was the result of its own failure—even refusal—to install the Spring Mountain well; and it still is.

### The Pocono Water Case

Honey Brook urged us to consider and follow a recently-filed opinion of this Court, *Pocono Water Company v. Pennsylvania Public Utility Commission,* 158 Pa. Commonwealth

---

9. Section 501 of the Code, 66 Pa.C.S. § 501, gives the PUC general administrative authority over all public utilities in the Commonwealth and it "shall have full power and authority ... to enforce, execute, and carry out ... its regulations and orders...." Further, "when a utility's failure to maintain reasonable and adequate service is alleged, regardless of the form of the pleading in which the allegations are couched, it is for the PUC initially to determine whether the service provided by the utility has fallen short of the statutory standard required of it." *Bell Telephone Co. of Pennsylvania v. Sanner,* 248 Pa. Superior Ct. 273, 277, 375 A.2d 93, 95 (1977).

10. *See* Section 3301 of the Code, 66 Pa.C.S. § 3301.

Ct. 41, 630 A.2d 971 (1993), and to conclude that Honey Brook's due process rights were violated. However, the facts in *Pocono Water* are clearly distinguishable from the facts presented here.

In *Pocono Water*, the Pocono Water Company appealed a PUC order that assessed a $16,125 penalty for violating a prior PUC order for failure to render reasonable service with adequate facilities in violation of Section 1501 of the Code. Presenting the issue as "whether the Commission violated Pocono's constitutional due process rights by imposing a penalty for violating a prior Commission order without first giving specific notice that a violation had occurred," *id.* at 42, 630 A.2d at 972, this Court reversed the PUC, holding that although the Pocono Water Company was on notice that it would have to defend the adequacy and reasonableness of its service pursuant to Section 1501 of the Code, the company did not have notice that it should prepare to defend its actions with respect to the specific requirements of the prior order.

In the present case, however, Honey Brook's due process rights were not violated, first, because it *did* have prior notice of its past violation; in fact, it was the company itself that brought its past violation to the attention of the ALJ by formally pleading its past failure in its answer, and second, unlike the facts presented in *Pocono Water*, Honey Brook was not subjected to an *immediate* civil penalty for violation of a *prior* order. Rather, the civil penalty imposed here flowed directly from its *present* failure to provide adequate water pressure, and, unlike *Pocono Water*, even that penalty was conditional in nature. Honey Brook had forty-five days to comply with the PUC's new and separate directive to install the Spring Mountain well. It would only have been forty-five days after the PUC's final order that Honey Brook would have again been in noncompliance, and would have incurred civil penalties. The civil penalties arose, not in the context of violating a prior order as in *Pocono Water*, but were instead solely predicated on Honey Brook being in noncompliance with a new and separate PUC finding.

### Conclusion

The order of the PUC is affirmed. We will not tolerate a situation whereby Honey Brook, by itself injecting into these proceedings its own past defiance of a PUC order, may once again deny relief to the long-suffering homeowners in the Luceno development.

## ORDER

NOW, August 25, 1994, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is hereby affirmed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The imposition of a penalty by the Public Utility Commission (PUC), *sua sponte*, upon a utility where the complaint gave no notice of the violation upon which the penalty is based and that fines were being sought violates due process.

Margaret Shulzitski, Mr. and Mrs. Raymond Sakrewsky, Edward and Arlene S. Burgess, and Bonita Hoats each filed a separate complaint with the PUC alleging that Honey Brook Water Company (Honey Brook) was providing inadequate water service.[1] Each of the complaints requested different forms of relief. Shulzitski requested that the PUC place someone in authority to correct the problems; the Sakrewskys requested that the water lines be checked for leaks; the Burgesses' requested contact between the PUC and the company to resolve the problem; and Hoats requested the PUC's aid in obtaining better water service.

Honey Brook was under a 1989 PUC order to drill a well to increase water supply to increase water capacity but had failed to drill the well as required because of financial difficulties. None of the complaints mentioned or sought enforcement of the PUC's 1989 order or sought imposition of civil

1. The complaints were filed on forms furnished by the PUC.

fines or penalties. The complaints were assigned to an ALJ for hearing.

When it became apparent during the hearings that Honey Brook's failure to provide adequate service was the result of its non-compliance with the 1989 PUC order, the ALJ, *sua sponte*, ordered compliance with the 1989 order, imposed a fine of $100 per day during the first week of non-compliance and $200 per day thereafter until the penalty had reached $200,000. The PUC affirmed the ALJ's decision. Because Honey Brook was never placed on notice in the complaints or any other pleading that the 1989 order was at issue or that fines would be imposed, the ALJ's order violated Honey Brook's due process rights because it did not have notice of the allegations made against it.

We addressed a case remarkably similar to this one in *Pocono Water Co. v. Public Utility Commission*, 158 Pa. Commonwealth Ct. 41, 630 A.2d 971 (1993). In *Pocono*, a complainant also filed a petition with the PUC alleging inadequate water service. *Sua sponte*, the ALJ imposed a penalty upon Pocono because it had failed to comply with a prior order to build storage tanks to provide better water service and imposed a penalty. Reversing the PUC's order and the imposition of a penalty and addressing the due process question, we stated:

> Due process in matters before the Commission requires that a party be afforded reasonable notice of the nature of the allegations against it so that the party can prepare a suitable defense. *Duquesne Light Co. v. Pennsylvania Public Utility Commission*, 96 Pa. Commonwealth Ct. 168, 507 A.2d 433 (1986). Although the Commission may take notice of results it reached in other cases, the record must reflect that the parties had notice that the Commission would consider such evidence. *City of Erie v. Pennsylvania Public Utility Commission*, 41 Pa. Commonwealth Ct. 194, 398 A.2d 1084 (1979). This court has held that the Commission violated due process rights when it assessed liability by determining an issue which the utility had not been afforded

a reasonable opportunity to address at an evidentiary hearing. *Duquesne Light Co.*

*Id.,* 158 Pa.Cmwlth. at 44–45, 630 A.2d at 973.

The holding in *Pocono* is clear. Before penalties can be imposed for violating a PUC order, a utility must be placed on notice in the complaint that it is being charged with violating a prior order and that penalties are being sought. Due process requires timely and adequate notice of what the agency intends to do and the procedure by which that action is going to be implemented. *Memphis Light and Gas v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). Due process is not satisfied merely because Honey Brook raised its non-compliance with the 1989 order in its answer. That did not put Honey Brook on notice that it was charged with violating that order and the PUC would seek to impose penalties for such a violation. Because the complainants did not charge Honey Brook with violating the 1989 order nor request that the PUC impose penalties for such, the ALJ could not do so *sua sponte.*

The view that *Pocono* does not apply because Honey Brook was not subject to an immediate penalty for violation of a prior order but a conditional penalty for present failures is a distinction without a difference. That position fails to take into consideration that the form and extent of the penalty is irrelevant. Penalties flow from violations. If the violation was not charged, then no penalty can be imposed—for past, present or future violations.

Accordingly, because Honey Brook was never informed in the complaint that it was charged with violating the 1989 order or that fines were sought, I dissent.

FRIEDMAN and KELLEY, JJ., join in this dissent.